IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DANIEL A. DURAN, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | A-25-CV-00526-ADA |
| | § | |
| MAURICE COOK, J. PEELER, and | § | |
| JAYLEN M. VENDRELL-WEST, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Plaintiff Daniel A. Duran's 42 U.S.C. § 1983 complaint, his responses to the Court's order for a more definite statement, and Defendants' Jaylen M. Vendrell-West and Jacob Peeler's Motion for Summary Judgment. (ECF Nos. 1, 9, 11, 22.) Plaintiff is proceeding pro se and in forma pauperis. Upon review of the parties' pleadings, the Court grants Defendants' motion for summary judgment.

## I. BACKGROUND

Plaintiff's pleadings focus on events occurring in the early morning of March 18, 2025, in Bastrop County.[1] In his complaint, Plaintiff names the following Defendants: Bastrop County Sheriff Maurice Cook and Bastrop City Police Officers J. Peeler and Jaylen M. Vendrell-West. Plaintiff alleges that, on March 18, 2025, Defendants Peeler and Vendrell-West pulled him over, stating his license plate did not match his vehicle's model. Plaintiff states Defendants lied and his license plates did match his car. Plaintiff also alleges Defendants Peeler and Vendrell-West told

---

[1] At the time he filed his complaint, Plaintiff was in custody at the Bastrop County Jail. He was later transferred to the El Paso County Jail Annex. (ECF No. 16.) Public records show that Plaintiff is currently confined to the Sanchez Unit in the Texas Department of Criminal Justice—Correctional Institutions Division, although Plaintiff has not filed a change of address with the Court.

him he had to pass a sobriety test, and after Plaintiff passed the test, they told him there was a warrant for his arrest.[2] He further alleges Peeler and Vendrell-West threatened to use a nightstick to break open his windows if he did not step out of the car. After he exited the vehicle, Plaintiff alleges Peeler and Vendrell-West illegally searched his car. He states no items were found on himself or in his vehicle, but after he was taken to the Bastrop County Jail, he was charged with possession of a controlled substance and driving while intoxicated. Plaintiff alleges Defendant Cook allowed Officers Peeler and Vendrell-Smith to perform an illegal search and seizure of his vehicle. He raises the following claims: (1) malicious prosecution; (2) deprivation of liberty without due process of law; (3) civil rights conspiracy; and (4) failure to intervene. He seeks $1.5 million in punitive damages.[3]

Defendant Cook filed a motion to dismiss for failure to state a claim which the Court granted. (ECF No. 20.) On December 19, 2025, Defendants Peeler and Vendrell-West filed a motion for summary judgment, arguing they are entitled to qualified immunity. (ECF No. 22.) To date, Plaintiff has not responded to the motion.

## II. LEGAL STANDARDS

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made

---

[2] Plaintiff states this was a bench warrant out of El Paso, Texas, for failure to appear in an aggravated assault case. Public records show that, on September 11, 2025, Plaintiff plead guilty to one charge aggravated assault with a deadly weapon in El Paso County, Texas, and was sentenced to four years in the Texas Department of Criminal Justice.
[3] Plaintiff originally also requested to have the charges against him dropped and to be released from jail. However, after the Court informed Plaintiff these were improper requests in a civil rights action, he withdrew them. (ECF No. 11 at 7.)

and supported, an adverse party may not rest upon allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *See* FED. R. CIV. P. 56; *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995).

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court views the evidence in the light most favorable to the party opposing summary judgment and indulges all reasonable inferences in their favor. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2023)).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253. "An officer merits qualified immunity unless (1) he 'violated a statutory or constitutional right of the plaintiff' and (2) 'the right was clearly established at the time of the violation.'" *Wilson v. City of Bastrop*, 26 F.4th 709, 712 (5th Cir. 2022) (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)).When considering a qualified immunity defense, the Court still views the evidence in the light most favorable to the non-movant and draws all inferences in the non-movant's favor, *see Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### III. DISCUSSION

<u>1. Summary Judgment Evidence</u>

The undisputed summary judgment evidence shows the following. At approximately 2 a.m. on March 18, 2025, Bastrop Police Officer Jacquelyn Mijares was patrolling when she noticed a sedan driving in front of her unit, making strange driving patterns. She attested that she believed the driver was nervous about a potential traffic stop. She ran the sedan's license plate through the Texas Law Enforcement Telecommunications System (TLETS), and the vehicle came back as a 2016 Dodge Ram with an expired registration as of May 2022. Officer Mijares also suspected the license plate on the vehicle did not match that of the car in the TLETS system, because she believed a Dodge Ram would be a pickup truck, rather than a sedan. For all these reasons, Officer Mijares determined she had probable cause to pull over the car for violations of Texas state law and initiated the traffic stop of Plaintiff's vehicle. (ECF No. 22-7.)

Defendant Vendrell-West attested that he arrived at the scene, along with Bastrop Police Sergeant Rodolfo Astran, to provide assistance to Officer Mijares. While on the scene, Sergeant Astran told Vendrell-West that he had observed an open container of Modelo beer in the center console of Plaintiff's vehicle, and that he detected a strong odor of alcohol emitting from the driver's side window. After Sergeant Astran ordered Plaintiff to exit the vehicle, he assigned Vendrell-West to investigate Plaintiff's state of impairment or intoxication. Vendrell-West attested he is certified and trained in standardized field sobriety tests used to detect the impairment or intoxication by alcohol.

During Vendrell-West's first field sobriety test of Plaintiff, he observed four out of six clues during the horizontal gaze nystagmus test indicating Plaintiff was impaired or under the influence of alcohol. Vendrell-West attested that Plaintiff then became uncooperative and failed the other field sobriety tests Vendrell-West tried to administer. Vendrell-West concluded he had probable cause to charge Plaintiff with driving while intoxicated. (ECF No. 22-8.) At 4:05 a.m., and after obtaining a search warrant, Vendrell-West withdrew a blood specimen from Plaintiff. (ECF No. 22-1 at 16.) Toxicology lab results later showed that Plaintiff's blood alcohol content was 0.094. (*Id.* at 9.)

While Defendant Vendrell-West was conducting the field sobriety tests, Officer Mijares ran Plaintiff's driver's license and found he had an arrest warrant for a probation violation. Officer Mijares also confirmed that Plaintiff's vehicle matched the license plates. (ECF No. 22-1 at 8.)

According to his incident report, Sergeant Astran arrived on the scene at 2:18 a.m. and made contact with Plaintiff through a partially rolled-down driver's side window. Plaintiff told Astran he believed the traffic stop was illegal and Astran responded that Plaintiff was making matters worse by refusing to provide identification and insurance for the vehicle. Astran then

5

noticed the smell of alcohol from the vehicle and observed the open can of Modelo. He instructed Plaintiff to step out of the vehicle and observed Plaintiff with slurred speech and blood shot eyes. Astran stated that, while Officer Vendrell-West was attempting to conduct a field sobriety test on Plaintiff, Officer Mijares reported that Plaintiff had an active warrant for his arrest. Plaintiff was arrested for his active warrant and for driving while intoxicated. (ECF No. 22-1 at 12-13.)

At approximately 9:44 a.m., Defendant Officer Jacob Peeler arrived at Bastrop County Jail to investigate a report by Bastrop County Jailers about a suspected controlled substance found wrapped in a one-dollar bill in Plaintiff's wallet. Peeler activated his Body-Worn Camera and took photographs of the relevant evidence. Peeler attested that, after he took pictures, the suspected contraband was taken to the Bastrop Police Department where it was weighed and tested. The substance weighed approximately 1.5 grams and was positive for cocaine. Subsequent testing performed by the Texas Department of Public Safety Laboratory confirmed the substance to be cocaine, weighing 1.34 grams. (ECF No. 22-9.) Public records show that, on March 4, 2026, Plaintiff pleaded guilty to possession of a controlled substance in penalty group 1/1-B greater or equal to 1 gram but less than 4 grams. He was sentenced to two years in TDCJ. *State v. Duran*, No. 21-F-050 (21st Dist. Ct., Bastrop Cnty. Mar. 4, 2026).

2. Constitutional Claims

Plaintiff claims that Defendants Vendrell-West and Peeler maliciously prosecuted him, deprived him of his liberty without due process of law, engaged in a civil rights conspiracy, and failed to intervene when they arrested him on March 18, 2025.

*a. Illegal Traffic Stop*

Plaintiff's central complaint appears to be that he was arrested under false pretense, i.e. that Officer Mijares initiated the traffic stop without probable cause. However, Plaintiff did not

name Officer Mijares in his complaint or in his subsequent pleadings: he only named now-dismissed Sheriff Cook and Officers Vendrell-West and Peeler. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Personal involvement requires "an affirmative link between the incident and some act by the defendant." *Rizzo v. Goode*, 423 U.S. 362, 363 (1976); *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (stating a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed."). As such, to the extent Plaintiff complains about the traffic stop initiated by Officer Mijares, his claim fails as a matter of law because he does not name her in this lawsuit.

To the extent Plaintiff argues Defendant Vendrell-West illegally arrested him, Plaintiff must show that Vendrell-West did not have probable cause to arrest him. *See Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional tort[]' of false arrest, … require[s] a showing of no probable cause.") (citations omitted). "[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interest is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008) (citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001)).

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)). Further, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to [qualified] immunity.'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204

(5th Cir. 2009) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) and *Hunter v. Bryant*, 502 U.S. 224 (1991)).

Defendant Vendrell-West attested he observed four out of six clues during the horizontal gaze nystagmus test that indicated Plaintiff was impaired or under the influence of alcohol. At that point, Vendrell-West attested Plaintiff became uncooperative and would not complete the other sobriety tests. Further, Sergeant Astran initiated the testing by noting the smell of alcohol coming from Plaintiff's car and observing an opened can of Modelo in the center console of Plaintiff's car. Based on these facts and circumstances, a reasonable person could conclude that Plaintiff was driving while intoxicated.[4] Accordingly, the Court concludes Defendant Vendrell-West is entitled to qualified immunity on this claim.

To the extent Plaintiff alleges Defendant Peeler violated his Fourth Amendment rights by unlawfully arresting him, this claim also fails. Plaintiff was arrested sometime after 2 a.m. on March 18, 2025, and Defendant Peeler did not become involved in the case until approximately 7 hours later, at 9:44 a.m. The search of Plaintiff's wallet, where the controlled substance was located, was incident to his arrest for driving while intoxicated and for an existing warrant for a probation violation. "When officers have probable cause to believe that a person committed a crime in their presence, the Fourth Amendment permits them to make an arrest and to search the suspect to in order to safeguard evidence and ensure their own safety." *Virgina*, 553 U.S. at 178. Defendant Peeler was not personally involved in the original arrest of Plaintiff, and any charges stemming from the discovery of cocaine in his wallet were incident to that arrest. Accordingly, Defendant Peeler is entitled to qualified immunity on this claim.

---

[4] Under the Texas Penal Code, "intoxicated" is defined as having an alcohol concentration of 0.08 or more. TEX. PENAL CODE ANN.§ 49.01(2)(B) (West 2025). Plaintiff's toxicology results from his blood sample taken almost two hours after his arrest showed an alcohol concentration of 0.094.

*b. Malicious Prosecution*

Plaintiff next claims that Defendants Vendrell-West and Peeler violated his rights by maliciously prosecuting him. To state a claim for malicious prosecution, a plaintiff must "prove that the malicious prosecution resulted in a seizure of the plaintiff." *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2002) (citing *Manuel v. Joliet*, 580 U.S. 357, 365-66 (2017)). In addition, a plaintiff must also show "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (quoting *Gordy v. Burns*, 294 F.3d 711, 727 (5th Cir. 2002)).

Plaintiff pleaded guilty to possession of a controlled substance on March 4, 2026. Based on this public record and the Court's conclusions in the prior section, he fails to establish elements 3 or 4 of a malicious prosecution claim against either Vendrell-West or Peeler. Because Plaintiff cannot show a favorable termination of his criminal conviction or the absence of probable cause for the proceeding against him, Defendants Vendrell-West and Peeler are entitled to qualified immunity on this claim.

*c. Civil Rights Conspiracy*

Plaintiff next claims Defendants Vendrell-West and Peeler engaged in a civil rights conspiracy. "In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in further of the conspiracy by a party to the conspiracy." *Armstrong*, 60 F.4th at 280 (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). Plaintiff's pleadings fail to show either a conspiracy involving state action or the deprivation of civil rights in furtherance of a conspiracy.

The undisputed summary judgment evidence shows that Defendant Peeler did not become involved in Plaintiff's case until over 7 hours after Plaintiff was arrested by Defendant Vendrell-West, and his involvement was at the request of the Bastrop County Jail officers, not Vendrell-West. Accordingly, both Defendants are entitled to qualified immunity on this claim.

### d. Failure to Intervene

Plaintiff next argues that Defendants failed to intervene, thus violating his constitutional rights. "A failure to intervene claim against a police officer requires that the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act." *Armstrong*, 60 F.4th at 280 (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)). Again, this claim also fails. The summary judgment evidence shows that Defendant Vendrell-West had probable cause to arrest Plaintiff for driving while intoxicated, and Defendant Peeler's search and seizure of Plaintiff's wallet was incident to that arrest. Further, there is nothing in the summary judgment record suggesting Vendrell-West or Peeler were in each other's presence. Accordingly, Defendants are entitled to qualified immunity on this claim.

### e. Municipal Liability

Finally, in Plaintiff's responses to the Court's order for a more definite statement, he responded affirmatively when the Court asked if he intended to seek damages against the City of Bastrop, Texas. (ECF Nos. 9 at 3; 11 at 2.) A municipality cannot be held responsible for the unconstitutional actions of its employees based on a respondeat superior theory of recovery; rather, a municipality is responsible only for its own illegal actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). To establish a municipality's liability under § 1983, a plaintiff must assert a cognizable violation of a constitutional right by a person executing the municipality's

policy. *Windham v. Harris Cnty.*, 875 F.3d 229, 243 (5th Cir. 2017). Consequently, an underlying constitutional violation is an essential foundational element of municipal liability. *Id*. (citation omitted). Further, the alleged constitutional violation must be connected to an official custom, policy, practice, ordinance or regulation of the municipality. *Monell*, 436 U.S. at 690-94. Thus, to state a claim for municipal liability, the plaintiff must show: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred by a person acting under the color of state law; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Child., Inc. v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996).

Plaintiff fails to state a claim for municipal liability because he fails to show that a constitutional violation occurred. Further, even if Plaintiff did show his constitutional rights were violated, nowhere in his pleadings does he identify a City of Bastrop policy, practice, or custom that was the moving force behind actions against him. Accordingly, pursuant to 28 U.S.C § 1915(e)(2)(B), this claim fails as a matter of law.

It is therefore **ORDERED** that Defendants Vendrell-West and Peeler's Motion for Summary Judgment (ECF No. 22) is **GRANTED** and Plaintiff's claims against these Defendants are **DISMISSED WITH PREJUDICE**.

SIGNED this 10th day of March, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE